THE TOLEDO, SAGINAW & MACKINAW RAILROAD COM-
PANY v. THE EAST SAGINAW & ST. CLAIR
RAILROAD COMPANY AND THE FLINT &
PERE MARQUETTE RAILROAD
COMPANY.

*Railroad companies—Condemnation proceedings—Right of crossing
another road—Petition—Map of proposed route—Deter-
mination of State crossing board.*

1. The *power* to appoint commissioners in railroad condemnation proceedings is conferred by How. Stat. § 3332 (as amended by Act No. 7, Laws of 1887); but the right to *exercise* it depends upon the existence of certain facts, which must be made to appear by petition to the court empowered to make the appointment.

2. An averment in such a petition that it is. necessary for public

use to take, for the use of the petitioner's road, the property and rights described in the petition, to the extent and for the purposes therein stated, is sufficient.

3. Whether the property in question in this case was necessary to accommodate the spur tracks mentioned, and whether the taking was necessary to develop business along the line of petitioner's road, were questions to be determined by the board of directors, and the petition sufficiently alleges that this has been done, and gives the conclusions of said directors.

4. Whether or not the necessity and public use required the taking of the property were questions for the commissioners to determine, and they determined that they did after viewing the premises and hearing the testimony, and in such case their determination of these questions will be held final.

5. It was unnecessary for it to appear that more was done in the construction of the road than is stated in the petition, before appointing commissioners; and if more is stated than the statute requires, it will be no reason for refusing the appointment, if the statutory requisites appear, and are substantiated before the court making the appointment. The petition in this case states that the map of the road sought to be constructed, showing the property asked to be condemned, was made and filed in the proper county.

6. Upon the map filed by the petitioner, its road at East Saginaw appears, with the terminal branches for which condemnation is now sought. They were a part of the proposed road, designated and surveyed with the main line at the same time, and there is no reason why for the purposes of the map they should not be considered a part thereof. As such, they received the certified approval of the board of directors, which should be held sufficient · to give the State board of railroad crossings jurisdiction to act, and to make the proper order in the premises.

7. It was not necessary that it should be found essential to the development of business along the line of the road that spur tracks or branches should be constructed by any other board or tribunal than a majority of the directors, before the State crossing board might act, and this determination is stated in the petition.

8. The discontinuance of the proceedings as to the King-street track could not affect the action to be taken as to the other branches.

9. The purpose for which the rights are sought to be condemned in this case is held to be a public use.

10. Before a railroad company can construct its road it must make

a survey of the route and line it desires for that purpose, and a map thereof, and file the same in the office of the register of deeds as required by statute, and it may then secure the right of way over the surveyed line by private purchase of the owners, and, if unable to do so, may institute condemnation proceedings for that purpose.

11. The map and survey adopted by the board of directors is intended to and must designate the line of road by which the place of termination is to be reached, and the line or lines upon which it is proposed to enter such place, and the ground to be occupied for its terminal facilities for the transaction of its business; and the property and franchises of another railroad company, or of any company, like the property of an individual, when condemnation is sought, is subject to the same proceedings, except that the franchises of the former cannot be seriously impaired, or to the extent of depriving it of the same.

12. The line or lines which the board of directors may adopt for the road on entering a city or village at the terminal points, when made a part of the original survey and designated upon the map, become a part of the main line of the road; and when the map and survey have received the approval of the State crossing board the rights of any other road may be condemned for its crossings, to the extent above stated.

13. The case of the construction of a branch or spur, or an extension not included in or with the main line, as a part thereof, after the map and survey have been adopted and approved by the State crossing board, or after the railroad has been completed, is not presented on this record.[1]

Appeal from confirmation of the report of commissioners in condemnation proceedings. (Gage, J.) Argued June 7, 1888. Proceedings affirmed November 1, 1888. The facts are stated in the opinion.

*Edget, Brooks & Conway* (*Benton Hanchett*, of counsel), for petitioner.

*William L. Webber*, for Flint & Pere Marquette R. R. Co.

*Wisner & Draper*, for East Saginaw & St. Clair R. R. Co.

---

[1] Head-notes prepared by SHERWOOD, C. J.

[The points of counsel are fully stated in the opinion. —REPORTER.]

SHERWOOD, C. J.   The petitioner in this case is a railroad company, organized and incorporated under the general law of this State, approved May 1, 1873.

By the articles of association the company is authorized to construct and maintain its road from Durand, in the county of Shiawassee, through Saginaw, to Mackinaw City, in the county of Cheboygan; and it is averred in the petition that it is the *bona fide* intention of the company to construct the entire road between the places named, including all branch lines and spur tracks connected therewith in East Saginaw; that, for the purposes of construction, it has divided the distance between said places in two sections.   The first, and the first intended to be constructed, extends from Durand to the Saginaw river, in the city of East Saginaw.

The petitioner further avers that the company has surveyed the route of its proposed line of road from the south line of Saginaw county to the Saginaw river, in the city of East Saginaw, and has made a map and survey thereof, by which the route of said railroad, and of the several branches and spur tracks thereof in the city of East Saginaw, is designated; and that it has adopted said map and survey, and located its road, with branches and spur tracks, according thereto.

That the northward track thus located crosses the East Saginaw & St. Clair Railroad, near Maple street, in East Saginaw, and runs thence to the intersection of Brewster and Franklin streets, and thence along Franklin and Thompson streets to the Saginaw river, and is designated on the map as the petitioner's main line.

That the more southerly branch of said road, by a

72 MICH. 14.

curve of 4 degrees and 62 minutes, crosses Maple street, south of Euclid street, in said city; and from thence runs westerly, across Washington avenue, near Sidney street, where said proposed line of road again branches,—one track going in a south-westerly direction, crossing Sidney, Curtis, Newton, Webber, Sherman, and Mackinaw streets, at its intersection with Linton; thence across Eaton street to a point in King street, crossing the East Saginaw & St. Clair Railroad at the intersection of Saginaw and King streets; and thence along King street to its southerly terminus of the same, crossing the several spurs of King-street track of the East Saginaw & St. Clair Railroad, which leads therefrom to the mills and manufactories situate on the westerly side thereof,—and is designated as the "King-street Branch" of petitioner's road.

That a second track from the point of divergence, near Washington avenue and Sidney street, runs on a curve to the north-west, crosses the track of the East Saginaw & St. Clair Railroad near the end of the Emerson bayou, and runs to the westerly bank of the same, and from thence north-easterly along said bayou, to the terminus on the "Middle Ground," so called, situated between the Saginaw river and Emerson bayou; this track being designated as the "Middle-ground Branch" of petitioner's road.

That the company has decided that, in order to develop the business along the line of its road, it is expedient to build and finish the branch lines above described at the same time and as a part of the main line. And it further avers that the building of the branches is necessary to obtain a location upon the river front on Saginaw river, and to accommodate the business and shipping interests of the city on said river.

That the map and survey show the particular crossings

to be made as selected, and of the tracks of other roads, with petitioner's main, branch, and spur tracks, and that such map has been approved by the State board, after notice to parties interested, and a full hearing of the matter before them, including the branches and spur tracks; and such approval is indorsed on the same, and has been filed, with the proper certificate of the directors indorsed thereon, that the company has located the road according to said map and survey, with the register of deeds of Saginaw county.

The petitioner further shows that the State crossing board has determined the grade for said crossings of petitioner's road, branches, and spurs, and has designated the switches and kind of frogs to be used at such crossings, and in what manner the expense is to be borne in making and maintaining such crossings; and has determined the stop of trains to be made before making a crossing of the road when completed, and what precautions shall be taken, and at whose expense be maintained, to prevent accidents at such crossings.

The petitioner further alleges that it has obtained the consent of the common council of East Saginaw to lay its track in King street.

Petitioner further shows that it desires to cross with its road and branches and spur tracks the defendants' roads and spurs, and to acquire the right to do so; and petitioner further alleges—

"That it is necessary, for the purpose of constructing, building, and operating the King-street branch of its said railroad, to cross at grade, and at an angle of 14 deg. to the center line thereof, the main tracks of the said East Saginaw & St. Clair Railroad, at the intersection of King and Saginaw streets, and also to cross, at such angle, to the center line thereof as their bearing course shall require, the several spur tracks leading westwardly on King street from said main track, at the place and in the manner specified in the said order of the State board

hereinbefore recited,—all substantially as shown in the map hereto annexed, and made part of this petition; and, to that end, to acquire the right and privilege to make use of that part of said King street occupied by the tracks of the East Saginaw & St. Clair Railroad, for the purpose of constructing and operating your petitioner's said railroad across the main and spur tracks and right of way of said East Saginaw & St. Clair Railroad, in said street, at the point designated in your petitioner's said map as the points of intersection or crossing said main and spur tracks; also the right to cut the rail of the said main track and spurs at the several points of intersection of your petitioner's proposed road therewith, and to insert therein suitable crossing frogs at the grade thereof, and to erect and maintain the safety gates at the several spur crossings, in the manner required by the said order of the State board; together with the right to pass and repass your petitioner's trains of cars on and over said main track and spurs.

"And your petitioner avers that the taking of said right, privileges, easement, and property in and over said East Saginaw & St. Clair Railroad, and its said spur tracks, to the extent, in the manner, and for the purpose so stated, is necessary for the public use.

"Your petitioner further shows that it desires to acquire the right to cross, with the Middle-ground branch of its said railroad, the said East Saginaw & St. Clair Railroad, at grade, at the point and angle designated for such crossing in said map hereto attached, and made part of this petition."

Petitioner then gives a particular description of the lands required for the right of way and crossing, and the particular interests it seeks to obtain therein for such use; and petitioner expressly avers that the taking of said land, and the privileges asked for therein, is necessary for public use, and to the extent stated; that the East Saginaw & St. Clair Railroad Company has its offices in East Saginaw, and is the owner of the East Saginaw & St. Clair Railroad; that the Flint & Pere Marquette Railroad Company is in possession of and operating said East Saginaw & St. Clair Railroad Company, and is the lessee thereof.

That petitioner has been unable to agree with the owner of and parties interested in said premises, for the premises and rights it desires, and to cross the track and acquire the right of way over defendant's railroad in King street, or any of the several spurs diverging from the King-street track, in manner and form as set out in the petition, or to acquire title thereto, or to the right of use in said premises described, for the purpose of crossing with its said Middle-ground Branch Railroad, because said defendants deny all legal right on the part of petitioner to take said premises for the purpose stated, and refuse to negotiate on any basis whatever. Petitioner prays for the appointment of commissioners to condemn the land; to determine the necessity for taking for public use for the Middle-ground branch of petitioner's road; also the necessity for taking for public use the rights of crossing, with petitioner's King-street branch of its railroad, the main track of the East Saginaw & St. Clair Railroad, located in King street, and its several spur tracks, diverging westerly therefrom, together with the other rights and privileges incidental to such crossing; and to appraise and determine the damage and compensation to be allowed therefor to the owner thereof and the operating mortgagee.

The respondents appeared, each by his own attorneys, and made their joint answer to the petition, and give, among other reasons why the prayer of said petition should be denied, the following:

"1. There has been no map filed in the office of the register of deeds of Saginaw county showing the line of the road of said petitioner, and certified to by a majority of the directors of said company, over, across, or along the property sought to be acquired by said petition.

"2. There has been no order made by the railroad crossing board, mentioned in said petition, in any case where said board had jurisdiction; and the order to which

said petition refers, so far as it relates to the property sought to be condemned in this proceeding, is utterly without force, and void, as having been made without any jurisdiction whatever.

"3. And the said East-Saginaw & St. Clair Railroad Company avers that no notice was given to it by the said railroad crossing board, nor was any hearing had at which it was represented, concerning the approval of the map referred to in said petition.

"4. It is not pretended that any part of the property sought to be taken by this proceeding is necessary for the construction of the petitioner's said railroad, the said track being alleged to be a spur or branch; and these respondents deny that there is any power or right, under the general railroad law, to take property and rights by condemnation for private purposes, and aver that the purposes sought to be served by the taking of the rights specified is a private purpose.

"5. And these respondents deny that the city of East Saginaw had any authority to grant to the petitioner any rights whatever upon King street; and aver that these respondents are in possession of said King street under the rights heretofore granted by the proper municipal authorities of the territory where the said street is situated, and has constructed its spurs and branches, and is using the same now as a part of the main line of the said East Saginaw & St. Clair Railroad, and that the use by the said East Saginaw & St. Clair Railroad is necessary for a public use, and that the territory sought to be taken by the said petitioner is territory which is now occupied by these respondents for a public purpose and public use, and deny the right of the petitioner to take property already subjected to a public use for its use.

"6. These respondents deny that the petitioner has any right to proceed to condemn property or to build spurs or branches for the development of business, prior to the construction of the main line.

"7. These respondents expressly aver that the order made by the said railroad crossing board, referred to in said petition, was utterly without jurisdiction, and that in assuming to exercise powers legally conferred upon it the said board exceeded its jurisdiction; and that the order made by said board in the premises is absolutely null and void, for the reasons in that behalf hereinbefore given.

"8. That the statute which authorizes the making of a map and survey of a line of road refers to a single line, and does not contemplate a system of branches and spurs radiating in various directions from said main line; and, as the rights and property sought to be acquired by this petition are not upon any part of the line or route of the road of said petitioner, the statute confers no authority to proceed before commissioners or a jury for condemnation.

"9. The map upon which said board of railroad crossings assumed to act was a map which was approved only by the directors as a map of the main line of road, and nothing upon said map indicated an approval by the directors of any spurs or branches.

"10. That the use which the petitioner seeks to make of the spur tracks and branches alluded to is a mere private use, for freight tracks only; that the petitioner has no expectation of using the same for passenger trains, but designs to treat them as yard-tracks, for the private purpose of receiving freight for transportation from private parties at less expense than to do so in the ordinary way of drayage.

"11. That the statute nowhere gives the petitioner the right to take the property and the right of way of these respondents, except for the purpose of crossing with its main line of road, and no such crossing is sought by this petition.

"12. That the statute nowhere gives the petitioner the right to take the facilities and franchises which belong to the respondents upon King street, and convert them to its own use.

"13. That the said petition is untrue, and insufficient in its allegations to entitle the petitioner to any order for the appointment of commissioners, and these respondents pray that the same may be dismissed.

"14. Respondents further state that the said petition does not properly describe the property and rights and franchises sought to be taken at the proposed crossing by its King-street branch of the said East Saginaw & St. Clair Railroad, nor at the proposed crossings of the seven branch or spur tracks extending from said East Saginaw & St. Clair Railroad, in King street; nor does it properly describe the property, rights, and franchises sought to be taken at the crossing by what is termed in the petition

'Middle-ground Branch,'—all said description being indefinite, uncertain, and insufficient.

"15. Respondents further state that the said petition is not in its allegations in conformity with the statute in such case made and provided.

"16. It is not competent in law to petition for more than one crossing, in one application, and this petition embraces nine crossings."

These several reasons were preceded by a denial of the truth of the averments of the petition.

Testimony was taken before the court upon the hearing of complainant's petition, in which it appears that the defendants had notice of the hearing before the State railroad crossing board, in the matter of the approval of the map; that their representatives attended the meeting, and took part in the same, and raised no question as to want of sufficient and proper notice at that time. The evidence also tended to show that the rights of way for the petitioner's road had mostly been obtained from East Saginaw, south, to within two and one-half miles of Durand, its southern terminus; that a contract for the construction of the entire line of road, including all branch lines and spur tracks, had been let, including the building of bridges, docks, terminal points, and depots, and everything required to fit the road for operation; that 12 miles of the roadway was ready for the ties, and the said Middle-ground branch had been partly graded, down to the East Saginaw & St. Clair Railroad track and crossing.

The testimony tends to show, further, that the "Middle Ground," so called, lies between Emerson's bayou and the Saginaw river, and is capable of being made navigable for vessels of all classes, and it is the design to construct upon this place docks, slips, and store-houses requisite for a water terminus; that the main line is largely to be furnished with its freight from this branch;

that the traffic will be of a bulky nature, such as coal, stone, and wheat, coming to the main line, and going out on the main line will be lumber, lath, salt, shingles, and timber and other forest products, and the main line will be greatly dependent at all times for its freight upon these branches and spur lines for its business, and that all these bulky articles must go to the river front, and not to a central warehouse, to make the business of any profit or successful, and there is no other location so eligible as this "Middle Ground" for the purpose mentioned.

That by the action of the defendants, in refusing to allow the crossing of the tracks, the contract for the completion will be greatly delayed, as the completion of the branches is of great assistance in bringing in material for the construction of the main line, the delay of which is a great damage to the public.

That 96 per cent. of the salt product of the Saginaw river, amounting to 18,000,000 barrels per year, is handled by the Michigan Salt Association, and that, of the 750,000,000 feet of lumber manufactured at the Saginaw mills, 250,000,000 feet, in 1887, were shipped by rail, and that it is believed that, in 1888, 300,000,000 feet will be so shipped, and that it is impossible to dray to central stations such quantities for the purpose of shipment; that it can only be done by the use of spur lines to manufactories where the articles are produced; that the tonnage of the salt and lumber alone in the Saginaw valley exceeds the entire tonnage of the wheat crop of the two states of Wisconsin and Minnesota combined, and that a very great public interest will be subserved by the increase of transportation to be furnished by the construction of petitioner's road, with its branches and spurs; that, in addition to the interest generally subserved by the proposed Middle-ground terminal, it is necessary to

accommodate the mills and salt manufactories and lumber-yards and the furniture companies, in removing their products.

The circuit judge, upon such hearing, overruled all objections made by respondents, so far as they relate to the Middle-ground branch of petitioner's railroad, and appointed commissioners to ascertain and determine the necessity for taking. for the public use the real estate, rights, and easements necessary for operating said branch, and to determine the compensation and damages of respondents which petitioner should pay therefor; and the court further denied the application relating to the King-street branch, whereby it sought to enforce a crossing of the respondent's road at King street where it intersects Saginaw street, and to cross the seven spur tracks of respondents' road, leading westerly in King street from the main track.

The order entered by Judge Gage in the matter reads as follows:

"The court finds that no sufficient cause has been shown against the granting of the prayer of the petition, so far as relates to the appointment of commissioners to ascertain and determine the necessity for taking the property, rights, and easements alleged in the petition to be necessary for the building and operating of peti-tioner's railroad, described and designated in the petition as the 'Middle-ground Branch,' in manner and form therein recited; and it is therefore ordered that all objections raised by respondents to said petition, so far as the same relate to said 'Middle-ground Branch' of petitioner's proposed railroad, be, and the same are hereby, overruled. And, respondents not demanding a jury, it is further ordered that Charles W. Grant, D. F. Rose, and D. A. Pettibone, three disinterested and competent freeholders of Saginaw county, be, and they are hereby, appointed commissioners, agree-able to the prayer of said petition, to ascertain and determine the necessity for taking for the public use the said real estate, rights, and easements alleged by petitioner to be necessary for the build-ing and operating of the said 'Middle-ground Branch' of its rail-road; and, in the event they determine that it is necessary to so take the same, to appraise and determine the compensation and damages to be allowed and paid therefor by petitioner to respond-

ents,—all in manner and form as more fully set out in said petition, and reference to which is for greater certainty hereby made. And such commissioners are directed to first meet at the court-house, in the city of Saginaw, on the sixth day of January, A. D. 1888, at 9 o'clock A. M., then and there to enter upon their duties under this appointment.

"The court further finds and determines that the application of the petitioner to acquire the right to cross with its 'King-street Branch' railroad the main track of the East Saginaw & St. Clair Railroad at the intersection of King and Saginaw streets, and also to cross the several spur tracks, seven in number, leading westwardly in King street from the main track of said respondent company's railroad, in manner and form prayed by its petition, is to be regarded and treated as an entire and indivisible proceeding.

"That, under the proofs in the case, so much of King street, so called, as lies south of the Ann Arbor Salt & Lumber Company's plat, and north of the north line of the Derby addition to the city of East Saginaw, and within the limits of which five of the spur tracks of respondents' railroad sought to be crossed by petitioner are situate, has not been at any time lawfully laid out, and is not now a lawful public street in which the common council of the city of East Saginaw could grant petitioner right of way, but it is in part the private property of the respondent company; and that as a result of this finding it is ordered that the said application of the petitioners in this cause, so far as it relates to the "King-street Branch" of its proposed railroad, in manner and form as now presented by the petition, be, and the same is hereby, denied.

"But this finding and order is not intended and shall not be construed as passing upon or determining against the rights of petitioner to obtain the crossing of said respondents' main track at the intersection of King and Saginaw streets, or the two spur tracks next south of such intersection which lead westwardly from said main track, in that portion of King street north of the south line of the said Ann Arbor Salt & Lumber Company's addition, nor to determine any right of either petitioner or respondents' in said portion of King street last specified, nor in anywise to preclude the petitioner from at any time hereafter proceeding by petition in proper form to acquire such right in said street as it may lawfully he entitled to acquire therein."

Commissioners were duly appointed in pursuance of the order made in the matter relating to the Middle-ground branch, and on the hearing before them all the parties were represented, and testimony was taken upon both sides. But one witness, however, on each side was sworn.

The commissioners viewed the premises, and, after hearing the testimony, determined—

"That it is necessary to take for the public use, * * * to wit, at the head of 'Emerson Bayou,' so called, in the city of East Saginaw,"—

The property, rights, and premises mentioned in the petition, sought to be condemned for the use of respondents' road; and assessed respondents' damages at the sum of $150, which they awarded to respondents jointly.

To the confirmation of this report of the commissioners the respondents appeared by their counsel, and made the following objections:

"1. There is no law authorizing the taking of the property and crossing of defendants' road for the purpose set forth, and as prayed for in said petition.

"2. The appointment of said commissioners was against respondents' rights, and was without authority of law.

"3. Under the evidence before the court, and the law of the land, the court had no authority to appoint said commissioners, and no right to act in the premises was conferred upon said commissioners by the order appointing them.

"4. The evidence taken before the court upon the hearing of the petition for the appointment of commissioners did not show that the taking of respondents' property was necessary for public use, but, on the contrary, the evidence affirmatively showed that such necessity did not exist.

"5. The court having determined that, as to so much of said petition as referred to King street, the prayer for the appointment of commissioners must be denied, and having so ordered, there was no authority for the appointment of commissioners upon what is called in the said petition the 'Bayou Branch,' and the court erred in appointing such commissioners, and they were without authority to act.

"6. The evidence taken before said commissioners did not show that the taking of the property in question was necessary for the public use, but, on the contrary, showed that no necessity existed.

"7. The evidence before the commissioners showed that no part of the line of petitioner's railroad was in operation or constructed, and no ties or iron had yet been laid upon any part of it.

"WM. L. WEBBER, Attorney for F. & P. M. R. R. Co.
"WISNER & DRAPER, Attorneys for E. S. &. St. C. R. R. Co."

The report of the commissioners was duly confirmed by the circuit judge.

Respondents have taken their—

"Appeal from the appraisal and report of the commissioners in this matter, and from the proceedings in said matter, and confirmation of the report of said commissioners, and specify the following objections as grounds and reasons for appeal:

"1. That the circuit court has no power or jurisdiction to appoint the commissioners in this matter.

"2. That, under the evidence taken upon the hearing for the appointment of commissioners, the court was not authorized to make such appointment, and the order appointing the same was erroneous, and against the rights of respondents.

"3. That the circuit court was not authorized to appoint said commissioners, and erred in so doing; because it affirmatively appeared, upon the hearing of the petition for their appointment, that the taking of respondents' property for crossing purposes was not necessary for the public use, and because it affirmatively appeared that the building of the spur track in question, and the taking of respondents' property for crossing purposes, had not been found necessary to develop business along the petitioner's line of road, and that no part of petitioner's railroad was in operation, nor had any ties or rails been laid upon any part of the same.

"4. That the circuit court erred in appointing said commissioners, and that the order appointing the same was unauthorized, because—

"a—There had been no order made by said railroad crossing board, at any time, in this matter, where said board had jurisdiction.

"b—The purpose of taking the rights sought to be taken by the petition was a private, not a public, purpose.

"c—That petitioner had no right to condemn property to build

spurs or branches, for the development of business, before it had any part of a main line constructed.

"d—The order alleged in said petition to have been made by the railroad crossing board was made before it had been found necessary, to develop business along petitioner's line of road, that any spur track or branch should be constructed, and before the board of directors of petitioner had judged or determined that there existed such necessity, or that it was expedient to build any spur or branch.

"5. The court having determined and ordered that the prayer of said petitioner, in so far as it related to the King-street branch, must be denied, there was no authority for the appointment of commissioners upon what is called in said petition the 'Middle-ground Branch.' The court erred in appointing said commissioners, and they were without authority to act.

"6. The evidence taken before said commissioners did not show that the taking of the property in question was necessary for the public use, but, on the contrary, showed that no such necessity existed, and the finding of said commissioners in that behalf was arbitrary and unjustifiable, and against the rights of respondents.

"7. The evidence taken before the commissioners showed that no part of the line of petitioner's railroad had been yet constructed, and no ties nor iron had yet been laid upon any part of it.

"8. That the court erred in confirming the report of said commissioners against the objections of respondents.

"Dated January 29, 1888.

"W. L. WEBBER,
"Attorney for Flint & Pere Marquette Railroad Company.
"WISNER & DRAPER,
"Attorneys for East Saginaw & St. Clair Railroad Company."

We will now proceed to consider the grounds of objection in the order stated, as they include, substantially, all the objections made from the beginning of the proceedings.

The first relates to the power and jurisdiction to appoint commissioners in this case. The power to appoint commissioners in such cases is conferred upon the court by statute (How. Stat. § 3332); but the jurisdiction or right to exercise that power depends upon the existence of cer-

tain facts, which must be made to appear by petition to the court empowered to make the appointment.

It is claimed the petition in this case is defective; and the particulars in which it is claimed by respondents to be insufficient are specifically pointed out in the next four grounds of objection above set forth.

The petitioner states that it is necessary for public use to take, for the use of petitioner's road, the property and rights described in the petition, to the extent and for the purposes therein stated. This is a sufficient averment upon that subject for the petition to contain. Whether the property in question was necessary to accommodate the spur tracks mentioned, and whether the taking was necessary to develop business along the line of petitioner's road, were questions to be judged of by the board of directors, and the petition sufficiently alleges that this has been done, and gives their conclusions. Whether or not the public use required the taking of the property was a question for the commissioners to determine. They viewed the premises, and heard the testimony upon the subject, and they determined the taking was for public use.

It was unnecessary for it to appear that more was done in the construction of the road than is stated in the petition, before appointing commissioners. How. Stat. § 3332. If more is stated in the petition than the statute requires, it will be no reason for refusing the appointment, if the statutory requisites appear, and are substantiated before the court making the appointment. The petition states that the map of the road sought to be constructed, showing the property asked to be condemned, was made and filed.

It is quite clear that the action of the State crossing board, approving the map, should precede any attempt to condemn the crossing; and respondents claim that in

this case there was no authority in the board to approve the map made; that it was not certified by a majority of the directors.

The Toledo, Saginaw & Mackinaw Railroad Company was organized in the fall of 1887, and on October 13 filed its map, upon which, at East Saginaw, its road appears, with the terminal branches for which condemnation is now sought. They were a part of the petitioner's proposed road, designated and surveyed with the main line at the same time, and there is no reason why for the purposes of the map they should not be considered a part thereof. As such, they received the certified approval of the board of directors; and we think that should be held sufficient to give the State board jurisdiction to act, and to make the proper order in the premises. It was not necessary that it should be found essential to the development of business along the line of the road that spur tracks or branches should be constructed by any other board or tribunal than that of a majority of the directors, before the State crossing board might act. It was only necessary for it to appear that the majority of the directors had adjudged or determined that it was necessary, expedient, and proper to build such spurs and branches before the State crossing board took their action to make this proceeding proper, and this is expressly stated in the petition.

We see no objection to the petitioner discontinuing its proceedings as to the King-street branch. It could not affect the action to be taken as to the other branches.

The main question to be considered, however, and which we regard as the important one in these proceedings, is raised in the sixth and seventh objections made by respondents' counsel, and in the second clause of the fourth objection:

1. That the purpose for which the rights are sought to be condemned is a private, and not a public, one.

2. That the evidence before the commissioners did not show that the taking of the property in question was necessary for public use, but, on the contrary, showed that no such necessity existed.

3. That it does not appear that any part of the line of the petitioner's railroad has yet been constructed.

Upon the last point we have said all that we desire to. The statute requires· that the articles of association of a railroad company must contain the name of,—

" The places from and to which, and the name of each county into or through which, it is or is intended to be constructed." How. Stat. § 3313.

The right to construct the road between the places named is thus conferred upon the company when it is legally and properly organized; but before the company can construct its road it must make a survey of the route it desires for that purpose, and make a map of the same, and file it in the office of the register of deeds. It may then secure the right of way over its surveyed line by private negotiation with the owners thereof, or, if unable to do so, it may take condemnation proceedings for the purpose; and, before the right of way can be acquired in such case, both the necessity for taking and just compensation for the property must be ascertained by commissioners or a jury, as the owner may choose.

The map and survey adopted by the board of directors is intended to and must designate the line of the road by which the place of termination is reached, and the line or lines upon which it is proposed to enter such place, with the grounds to be occupied for its terminal facilities for the transaction of its business, and both should be selected with a view. to the business of the road, and the convenience of the same, and the necessities of the public; and

the property and franchises of a railroad company, or of any other company, like the property of an individual, when condemnation is to be had, must be subject to such necessity, except that, in the case of a railroad, its franchises cannot be seriously impaired, or to the extent of depriving it of the same.

The line or lines the board of directors may adopt for its road on entering a city or village, in reaching the terminal points, when made a part of the original survey and map, constitute and become a part and parcel of its main line; and when the map and survey shall have received the approval of the State crossing board, and been filed with the register of deeds of the county in which the crossings are to be made, the rights of way of other roads may be condemned for the use of the crossing road, as in the case of private property, and it will make no difference whether the new road proceeds through the place to the terminal points by one or more terminal lines. The construction of a branch or spur, or an extension not included in or with the main line, and as a part thereof, after the map and survey have been adopted and approved by the State crossing board, or after the railroad has been completed, presents another and entirely different question. It then becomes an added section of the road. The circumstances may or may not be the same as when the main line was constructed. The convenience and necessity in the one case may be far different from those in the other; but that question is not now before us, and it is unnecessary to discuss it further. The same power and authority existed in the company to condemn the respondents' right of way for its spurs or branches as for the main line, and it was not necessary that any portion of its line should have been completed, for the company to do this.

The company is also given power by the statute to condemn the right of way across the respondents' track, if necessary to obtain it. How. Stat. § 3323; Laws of 1887, p. 294.

It is true that a railroad company cannot be organized under the general statute, or by special enactment, with the power to condemn a right of way for a strictly private use. Such a statute would come within the prohibition of the Constitution; and, while all railroads not constructed by the State or general government are more or less for private gain, still it is nevertheless true that the construction of no such railroad can be authorized by the Legislature under the Constitution unless some public interest or necessity is subserved thereby, and the approval of the crossing board of such a scheme would be of no avail.

The object in constructing petitioner's road is for the transportation of freight and passengers. A large and profitable portion of the freighting business, it appears from the record, cannot be reached in the ordinary way of moving the same, except by the extension of its road to the points designated by the board of directors, and that the road cannot be operated unless it can secure the business of moving such freight; that for this purpose the construction of the branches designated is necessary. If this is true, it is difficult to see why the construction of the branches should not be regarded for public use, as well as the construction of the main line, which is not controverted. It would appear that the object of the petitioner is to acquire important facilities for the transaction of the legitimate traffic and business of its road now being constructed, when completed.

It is evident that while the business to be reached by the use of the branches may enhance the profit of some individuals, and is largely for the gain of the company,

it is equally certain that the use of the road for that purpose is of a public nature, and, like all the other business of the road, it is necessary to be reached in order to enable the company to operate its line of road. Indeed, the record shows that the construction of the branches and spur tracks laid down upon the map is essential to any successful operation of petitioner's road, and must be held for the public use. This is not the case of a company seeking the condemnation of property to reach some private business, not essential to the successful operation of its road, and for private use, as claimed by counsel for respondents. The public character and use of the branches are as well established as are those of any portion of petitioner's road.

We think the proceedings should be affirmed, with costs.

CHAMPLIN and LONG, JJ., concurred with SHERWOOD, C. J.

CAMPBELL, J., (dissenting). I cannot agree in the conclusions of the Chief Justice in this case, or upon the action of the State crossing board, which was brought before us at the same hearing. The whole proceedings are, in my opinion, in violation of the railroad laws, and absolutely void. I propose to refer only to those matters which are fundamental. I doubt very much whether the other objections taken are not sound; but, if there was no power to authorize lands to be condemned at all, the questions of regularity do not become important.

As the opinion of the Chief Justice does not, as in his view it was not necessary he should, state the peculiarities of these applications, I will point out such of them as it is necessary, in my view, to state:

The petition states the petitioner to be a corporation authorized to make a railroad from Durand, in the

county of Shiawassee, via Saginaw, to Mackinaw City, in the county of Cheboygan, and that it was the intention to construct and maintain it throughout—

"From and to the said places named, for that purpose, in ' its articles of association, including all the branch. lines and spur tracks connected therewith in the city of East Saginaw."

That the work had been divided into two divisions, for purposes of construction, and that division one extended from Durand to the Saginaw river, in East Saginaw; that the railroad runs from a point named, and through towns named, to a point in the north-west quarter of section 21, near the southerly limits of East Saginaw, and "thence, by two separate tracks, to the Saginaw river." The northward track is designated on the map and petition as petitioner's main or through line of road.

It then proceeds to describe what it calls. branch road, or tracks; the principal one crossing Washington avenues near Sidney street, where it again branches into two more branches, one called the "King-street Branch" and the other the "Middle-ground Branch," which latter coasts the bayou, and terminates at the middle ground in the river.

These several branches are stated in the petition to have been determined necessary to develop business along the line of the railroad, and to obtain a river front on the Saginaw river, and reach and accommodate the shipping interests. The remainder of the petition states various matters relating to the details of the work desired, and making the crossings over respondents' roads.

The King-street branch was relinquished on the hearing below. Whether this was regular is not important, in my view of the case.

We have, then, in brief, a railroad organized to run

from Durand, through Saginaw, to Mackinaw City, with its main track reaching Saginaw river, away from any of what the petition treats, and properly treats, as branches. It further gives, as a reason for the creation of branches, the necessity of developing its business; putting its rights entirely under section 28 of article 2 of the railroad act. That section allows a company to—

" Build such spur tracks or branches as may be found necessary to develop business along its line of road, as the board of directors may judge to be expedient, and for that purpose shall have the same powers and rights in all respects as are conferred upon it for the construction of the main line, and may subscribe to the capital stock of any other company organized under this act, with the assent of such other company. * * * All companies owning or operating such spur or branch railroad, or making any such contract or agreement with connecting or intersecting lines of railroad, shall furnish cars and transport freight over such spur, branch, or connecting road, at the same rates, and subject to the same restrictions and regulations, as shall be adopted for the transportation of freight upon the main line."

By section 45, railroads having either or both of their *termini* on navigable streams, between this and other states and Canada, preventing direct railroad connection, may own or operate vessels to form such a connection.

The chief question to which I propose to refer is the legality of condemning lands or crossings for such tracks as this petition proposes to condemn, as well as the further question whether in the present case such branches could be so laid if in any case allowable.

I think it is impossible, under this petition, to regard anything described in it for condemnation as belonging to the main track. The petition itself makes no such pretense. The statute for many purposes draws a clear distinction between the main track and all others. The main track is throughout treated as a single line between

two *termini*. And its right to form water connections is confined to those two *termini*.

Apart from the other objections, this has a bearing on the Middle-ground branch. That is proposed to have a terminus of its own on navigable water, to accommodate the shipping business. The legislative policy, as designated in both special charters and general laws, has not been to give railroad companies power at any place not a terminus to make water connections. Under the old special charters, amendments were required to authorize such connections at all at any but the original *termini*, and the general law is positive on the subject. There must have been some reason for it. It very probably may have been the purpose of the Legislature to make each road a single highway from one point to another. In other highways and turnpikes the law has been strictly construed against extending them beyond or away from the fixed bounds, and in several cases in this Court we have held the franchises could not be exercised beyond those bounds.

But when we look at the powers given to build roads, this appears more plainly. The only roadway that any railroad company is authorized to acquire by condemnation is to lay it out—

"Not exceeding one hundred feet in width." Article 2, § 9.

Lands may be had for depot grounds, and for embankments, and other adjacent purposes, necessary for the safe building of the track. Whatever road is laid must be within the line of 100 feet, or in the yards and depot grounds. There is no such thing contemplated as a series of tracks forming half a dozen *termini*. This is also in the direct line of legislation on all artificial ways. No one has supposed that power to lay out one line involves

power to lay out any more than one. Franchises, especially such as involve condemnation of lands, cannot be enlarged beyond the grant, as fairly construed. It cannot be held, I think, that a single company, under a power to go from A. to B., can spread out in all directions, and cover different routes, long or short. If this could be done, the road first occupying the ground has under the statute some protection against rivalry in important respects, and under such a claim as this it might very easily change its whole pretended character. I cannot, therefore, agree with the Chief Justice in considering the question of condemnation for branches as out of the case. It seems to me to be the very and only fundamental question in the cause. Petitioner makes no other case.

Section 28, as already seen, authorizes branches and spur tracks to be built, and, in proper cases, to be built under the right to condemn lands. But this cannot mean that everything that a railroad chooses to call a branch is one under which lands can be appropriated. Taking this section together, it clearly indicates that these so-called "spurs" or "branches" shall be in themselves highways of transportation, over which the same rights exist in the public and in favor of other railway companies for carriage as on the main line. They are treated as roads in themselves, analogous to any other road, and just as public in their nature. They are treated in this section as connecting roads are in the hands of other companies, and there is nothing to indicate that a railroad may lay out tracks and condemn lands for any branches that are not for public use and convenience. Each branch is treated in the statute as a separate enterprise, by itself. It cannot be seriously claimed that these branches are distinct highways, or serve any such purpose; and, if not, the company cannot compel land-

owners to submit to them, or group them in one peti-
tion, and keep them from separate consideration.

It is not true in this State, as it is in some others,
that a company once organized has an absolute right to
secure its road. Under our Constitution, any one can be
allowed to make such an organization. But, when it
comes to taking land, the necessity of the enterprise for
the public utility must be determined by a jury or com-
missioners. This cannot be settled once for all. On
every occasion of condemnation proceedings, this ques-
tion is open, and may be decided against the power.

This record shows plainly enough that this doctrine
was not laid before the commissioners. Their finding
shows conclusively that they considered themselves as
only inquiring whether the land was needed for the
branches, and not for the public use, in any other sense.

This suggests another question much dwelt on at the
hearing. No branch is allowed by the statute except as
it is found " necessary to develop business along its line
of road." This implies the existence of a road to do
business. No such road existed when this land was
sought to be condemned, and it is not made a condition
of condemnation that any shall be built. It is easy to
see that with these short lines running in every direction
through East Saginaw, if they can be separately established,
the whole main line, which may be of no account, may be
dropped or subordinated. Proceedings set up for one
purpose, as parts of one road, may be used to put in
single hands the key to the local business, and to make
the short tracks an end for separate profit as feeders to
other roads, instead of means to help the main line.  I
do not think this is allowable.

No rule of corporation law is plainer than that corpo-
rations must keep within the lines and conditions of their
chartered privileges. The legal powers of our railroad

companies are very great, but they are limited to such connections as the law specifies, and their power to take lands from unwilling owners is by the Constitution confined to public, and not corporate, necessity. That principle is violated by these proceedings.

Passing by the minor irregularities, which might be rectified in these or other proceedings, I think the objections referred to are absolute and incurable. There was no power, I think, in the commissioners of crossings to permit these crossings, and no power to condemn the right of way. I think the action of all parties in the matter should be quashed.

MORSE, J., concurred with CAMPBELL, J.