## CONDEMNATION OF RIGHT OF WAY FOR AN INDUSTRIAL TRACK.

[Circuit Court of Lucas County.]

STATE, EX REL SUMNER, PROSECUTING ATTORNEY, v. TOLEDO RAILWAY & TERMINAL CO.

Decided, January 19, 1903.

*Railways—Eminent Domain—Condemnation—Industrial Tracks Are Side-tracks—Section 3281—Quo Warranto—Expert Testimony.*

1. An "industrial" track, branching from a belt railway and leading to a large plant about one mile distant, which track the belt railway company expects to use in the ordinary course of its business as a common carrier of persons and property, is for a public use, and is a "side-track" within the meaning of Section 3281; and the power of eminent domain may be invoked for the condemnation of a right of way for said track.

2. Expert testimony is competent in an action in *quo warranto* against a railway company, where the issue is as to whether a certain proposed track is a side-track, or one to be used for a private purpose.

HULL, J.; HAYNES, J., and PARKER, J., concur.

This is an action in *quo warranto* brought against the defendant to oust it from a certain right of way and test its right to appropriate land for a certain track. The question involved is whether the defendant company has authority to appropriate a right of way, upon which it proposes to construct a track to connect its main line with a certain industry or industries, adjacent to its line, or in the neighborhood of its line, in order that the defendant may transport its cars and engines to and from such industries. It appears from the pleadings and evidence in the case that the defendant is about to construct a track some 5,500 feet in length—a little over a mile—running from the main track to the Toledo Furnace Company, so called, and as claimed by the defendant with the intention of extending it a short distance beyond the furnace company to the Craig shipyard and the wharves and docks along the river front in that neighborhood.

The relator claims that the track about to be built is not a side-track, but that it is to be used for a private purpose, and that,

514    CIRCUIT COURT REPORTS—NEW SERIES.

State, ex rel, v. Toledo Ry. & Term. Co.    [Vol. I, N. S.

therefore, the railroad company has not the power to appropriate and condemn land for this purpose; that it can only acquire it by purchase. It is well established that the right of eminent domain, the right to appropriate property, does not extend to cases where it is to be taken for a private purpose. The relator says in his petition:

"Paragraph 5. Relator is informed and believes and so charges the fact to be that the strip of land across said north half of said east quarter of said northeast quarter of said Section 32 in the city of Toledo, so sought to be appropriated in said action 2374, is designed by said defendant to be used as a part of a right of way for a track to connect the main track of defendant with the plant of the Toledo Furnace Company, which is a private corporation; that the use to which said strip of land is to be appropriated is a private use and that defendant has no right of eminent domain to so appropriate said land for said use; that defendant seeks to appropriate said strip of land neither for side-tracks, nor for depots, nor for workshops, nor for round-houses, nor for water stations, nor for material for construction, nor for right of way to enable it to construct or repair its road, nor for aqueducts, nor for drains, nor for the railroad described in its articles of incorporation.

"Wherefore, said prosecuting attorney says that the defendant has no right to exercise the power of eminent domain to appropriate the strip of land, or any part thereof, described in paragraph four hereof, nor to prosecute said action 2374 in the Probate Court of Lucas County against Laura P. Mitchell, Emily P. Hastings and Rutherford H. Platt, or either of them."

The defendant in its answer with reference to paragraph five of the relator's petition, says:

"5. For answer to the allegations of paragraph number five of said petition, defendant says that the right of way sought to be acquired and appropriated in said action 2374 in said probate court, is designed by defendant to be used, and is necessary as a part of the railroad of the defendant company, for a side or spur-track, connecting the main track of the defendant with the plant of the Toledo Furnace Company and other industrial plants located, and to be located, upon the line of the track so proposed to be constructed; that the use to which said strip of land is to be appropriated is not a private use, but a public use in connection with defendant's main line of railroad for the purpose of reaching said Toledo Furnace Company and other industries located and to be located on said side or spur-tracks; and that the same is to be devoted to a public use by the defendant as a common

carrier of persons and property for all who desire to and can use the same upon the same terms and conditions; and the construction, maintenance and operation of said side or spur-track to said Toledo Furnace Company and other industries is for the purpose of using the same in connection with, and as a part of, the railroad described in defendant's articles of incorporation."

A supplemental answer was filed on the day of the trial, shortly before the trial was commenced, setting up:

"That since the filing of its original answer herein, to-wit, on or about the twelfth day of November, 1902, the stockholders of the Toledo Railway & Terminal Company, at a meeting of said stockholders duly called for that purpose, determined to construct a branch track or line from the main line of said company's track, commencing at a point on said main line on the easterly side of the Maumee river, in Toledo, Lucas county, Ohio, six hundred and thirty-seven (637) feet northeasterly of the center line of Consaul street, measured along the center of the right of way of said main line, and extending from said point in a northeasterly direction to a point of connection with the railroad of the Maumee Connecting Railroad Company, said point being westerly of Wheeling street and northerly of Front street in said city of Toledo, so as to connect said branch line with said railroad of the Maumee Connecting Railroad Company, and also with the railroad of the Wheeling & Lake Erie Railway Company near said point, and so as to connect said branch line with the place or places lying northerly of Front street, westerly of the main tracks of the Wheeling & Lake Erie Railway Company, southerly of the Maumee river, and easterly of the line between the property of the Toledo Riverside Railway Company and the property of the National Malleable Castings Company.

"That thereupon, and on the same date as last aforesaid, this defendant caused a copy of said resolution, duly acknowledged and certified by the directors and officers of defendant according to law, to be filed in the office of the Secretary of State of the State of Ohio.

"Defendant further says that the branch line aforesaid is identical in its location, and the property necessary to appropriate for said branch line is the same as the line and property described in its original answer herein, and that it is necessary in the construction of said branch line to appropriate and use the same property described in its original answer."

This supplemental answer was filed by the defendant, and these steps taken apparently with the intention of meeting the case if

516    CIRCUIT COURT REPORTS—NEW SERIES.

State, ex rel, v. Toledo Ry. & Term. Co.    [Vol. I, N. S.

the court should be of the opinion that the track about to be constructed was not a side-track, but a branch track.

The relator demurred to this supplemental answer, upon the ground that a railroad company has not the power to condemn and appropriate property under the right of eminent domain, for a branch track; but it was claimed if they desire the property for that purpose, they must purchase it. This demurrer was informally overruled at the time of the trial, with the reservation, however, that the court might consider it further and decide it in the final determination of the case. Thereupon the relator filed a reply to the supplemental answer. Testimony was offered to sustain the claims of the parties, and, upon the trial of the case, the defense, whether required to do so or not, assumed the burden in offering testimony.

Leaving out of consideration for the present the supplemental answer, the two main questions are whether this track is a side-track, and whether it is for a public use, as claimed by the defendant, or whether it is for a private use, as claimed by the relator. If it is a side-track, the provisions of Section 3281, Revised Statutes, apply. This section provides as follows:

"A company or a municipal corporation which may own or operate a railroad may enter upon any land for the purpose of examining and surveying its railroad line, and appropriate so much thereof as may be deemed necessary for its railroad including necessary side-tracks, depots, workshops, round-houses and water stations, material for construction, except timber, a right of way over adjacent lands sufficient to enable it to construct and repair its road, and the right to conduct water by aqueducts and to make proper drains; but no appropriation of private property to the use of a company or municipal corporation which owns or operates a railroad shall be made until full compensation therefor is made in money or secured by deposit of money to the owner irrespective of any benefit from any improvement proposed by the company or such municipal corporation as prescribed by law."

If the track in question is not for a public use, but for a private use only, the railway company has not the right to appropriate or condemn, by whatever name the track or improvement may be known. Upon the trial, expert testimony was admitted on

the issue as to whether this was a side-track or not.   This was over the objection of the relator.   The defendant called Mr. Whittlesey, its general manager, and Mr. Buxton, an experienced railroad man, who had had twenty or thirty years experience in that line of business, and they gave their testimony as experienced railroad men as to what a side-track was.   As I say, this testimony was objected to and was admitted subject to objection and exception of the relator.   It was urged that a definition of "side-track" could be found in the dictionaries, and that it was not necessary to resort to expert testimony, and that the question was one for the court sitting as a jury in this case, and that the witness should not be permitted to take the place of the court.

We are of the opinion, however, that the testimony was properly admitted.   Expert testimony is admissible upon a question, regarding which there is not common knowledge, where the court or jury may be aided or educated by the expert's views and opinions of men experienced in some particular line, as medical men, scientific men, or experienced railroad men.   We think expert testimony was admissible, not for the purpose of determining the very question that was submitted to the court in this case, whether this is a side-track or not, but for the purpose of giving us the benefit of the experience and knowledge of these men in these matters, in order that we might be aided as a court, in determining whether this particular track would be properly called a side-track or not. The Supreme Court of this state, in the case of *Ohio & Ind. Torpedo Co.* v. *Fishburn,* 61 Ohio St., 608, in the syllabus, say:

"1.   Opinion evidence may not be given where an opinion is asked as to the precise, ultimate fact in issue which is to be tried by the jury, but such testimony is not necessarily incompetent if it calls for an opinion as to a matter which is evidentiary only and merely tends to establish a fact which may be involved in the issue.

"2.   Such evidence is not competent where the matter inquired about is one within the common knowledge of men of ordinary information, and it is practicable to place before the jury all the primary facts upon which a conclusion is to be based, but where a witness is shown to be learned, skilled or experienced in a particular business, he may be asked to give an opinion as to pertinent matters which are not the subject of common knowledge, and as to which the jury is not so competent as is the witness to draw the proper conclusion from the general facts proven."

518    CIRCUIT COURT REPORTS—NEW SERIES.

State, ex rel, v. Toledo Ry. & Term. Co.    [Vol. I, N. S.

It appeared that just what a side-track is, what would be called a side-track, or what would be called a branch or spur, or a switch, were matters that people of ordinary knowledge, not conversant with railroad affairs, would not know or could not be familiar with. The court were not as familiar with these matters as these men who were called; and under this authority and other authorities that might be cited we think the testimony was competent. In a case to which I will refer later, 109 Ill., 237, expert testimony was admitted, as appears by the opinion in the case, upon this very question as to whether a track was a side-track or not. It does not appear that it was objected to, however, in that case.

Now as to whether this piece of track that it is proposed to build can properly be called a side-track or not. The railroad of the defendant surrounds the city of Toledo, or will, when it is finished, making a belt line of some twenty-eight or twenty-nine miles in length. Its purpose is to connect with all of the railroads entering the city of Toledo, said to be twenty or more in number, and to convey freight from one railroad to another in the city, and from the railroads to manufactories and other establishments in the city, or from such establishments to the various railroads in the city. The track in question, as I have stated, is about, or will be, if finished, 5,500 feet long, and extends from the main line as now projected, to the Toledo Furnace Company, near the river. It does not run parallel with the main line of the road, but runs away from it and aside from it, its terminus being about 2,000 feet from the main line, and is to be used for the transportation of freight from and to the Toledo Furnace Company, and, as it is claimed by defendant, from and to other industries in that neighborhood. Such a track is known, as is said by some of the witnesses in railroad circles and railroad parlance, as an "industrial track," and might be so called. Mr. Whittlesey and Mr. Buxton, the two witnesses called by the defendant, testified that in their judgment a side-track is any track, aside from the main track, with the exception possibly of a branch, which has more the character of an independent railroad; that while there were different kinds of side-tracks, spurs and switches, in their judgment, they are all covered by the generic term side-track.

Mr. Blair, a railroad man, called by the relator in rebuttal on

this question, testified that in his judgment an industrial track might be included under the term side-track, as one kind of side-track; but in his judgment this particular track (he was permitted to answer a hypothetical question) was not a side-track. He, however, stated on cross-examination that an industrial track might be regarded as a kind of side-track. The definition given in the Century Dictionary, which was quoted by counsel for the relator, is more restricted than the definition given by the experts who were called. That authority defines a side-track as follows:

"A short line of rails branching off by a switch from the main line of a railroad, and either returning to it or not at the further end, for use in turning off, shifting rolling stock, etc. Siding—
*   *   *."

Then follows a definition of a siding. This definition is short, it will be observed, and rather limited. We think we have a right to consider the opinions of such experienced railroad men as were called here, in determining what is commonly known as a side-track in railroad circles. As was suggested by one member of the court upon the trial, the lexicographer in doing his work had recourse, not only to books, but to the knowledge and experience of such men. We are of the opinion that this may properly be called a side-track, and that it is a side-track, rather than a branch road, as comprehended and intended by Section 3280. It seems to us that it is to be used for the purposes that side-tracks are often and ordinarily used, for running along the side of the main road and for the purpose of gathering up freight and traffic for the main line and bringing it to the main line. It is not our purpose to give a general definition of the word side-track, but we think this track is within that term as used in the statute.

Is it then for a public rather than a private use? For, in order to entitle the railroad company to appropriate, it must be for a public use, whether a side-track or not. The doctrine of the various cases which we have examined seems to be that if a track of this character may be used by the public generally, it is so regarded as for a public purpose, although it may, at the time of its construction, only be used by one company or one individual, aside from the railroad company; that is to say, that the criterion to determine the fact is not whether only one person used the track

520    CIRCUIT COURT REPORTS—NEW SERIES.

State, ex rel, v. Toledo Ry. & Term. Co.    [Vol. I, N. S.

at the time it is constructed, but if it is open to the use of the public, and if it is for a common and public use by the railroad company in the management of its business, it may be said then to be for a public, rather than for a private use. In the case of *Toledo & W. Ry. Co. v. Daniels,* 16 Ohio St., 390, the Supreme Court makes some remarks, which perhaps have some pertinency here. The question in that case was, whether under Section 3281, Revised Statutes, a railroad company might condemn and appropriate for side-tracks, after it had condemned and appropriated for its main line, or whether it must all be done at the same time, the claim being made that the power existed to make only one appropriation. The court held there that it might be done afterwards, as needed. They say in the syllabus:

"Under the general corporation act of 1852 (S. & C., 275, Sections 21, 27, 28), a railroad company has power to condemn land for new side-tracks, leading from the main road to its depot buildings, whenever they become necessary in the proper management and operation of the road."

The court say in the opinion, on page 396:

"It is true that grants of this nature, being in derogation of private right, must be strictly construed. If, therefore, there is reasonable ground of doubt as to whether the Legislature intended to grant the continuing power claimed to be exercised here, the doubt should be resolved against the company, and it must go back to the law-making power for a new grant—a grant of power to change, or add to its side-tracks, depots, water tanks, etc., etc., as the necessities of business require. Is there such reasonable ground of doubt? We think there is not. Taking these provisions together, and construing them in the light of the historical fact that a railroad—that is, a useful and valuable railroad—is not a stationary thing, but grows with the growth of the country, it seems clear to us that the Legislature must have meant to grant the power claimed.

"The power to make 'necessary side-tracks' *prima facie,* is the power to make them *when they* are necessary. Otherwise it would be the power to make *unnecessary* side-tracks. *Prima facie* power to do any act, is power to do it in such manner and at such time as is *usual, convenient,* and *reasonable*—in such way as prudent men manage their own concerns. Tried by this rule, there can be no serious doubt of the meaning of Sections 21 and 27, by themselves considered. And we think that meaning is made plainer by Section 28, and the general provisions of the act."

I call attention to this for the purpose of showing the view the Supreme Court took in this case, and their discussion here of the necessity of building side-tracks and making improvements of that kind as the road grows. As they say, a railroad is not a stationary thing, but with growth, side-tracks become necessary, and then if they are necessary for the successful carrying on of the railroad, they may be built under this section and land appropriated therefor.

The case of *Toledo, S. & M. Ry. Co.* v. *Railway Co.*, 40 N. W. Rep., 436 (72 Mich., 206), is in point. On page 445 of the opinion the court say:

"The object in constructing petitioner's road is for the transportation of freight and passengers. A large and profitable portion of the freighting business, it appears from the record, can not be reached in the ordinary way of moving the same, except by the extension of their road to the points designated by the board of directors, and that the road can not be operated unless it can secure the business of moving such freight; that for this purpose the construction of the branches designated is necessary. If that is true, it is difficult to see why the construction of the branches should not be regarded for public use, as well as the construction of the main line, which is not controverted. It would appear that the object of the petitioner is to acquire important facilities for the transaction of the legitimate traffic and business of its road now being constructed, when completed. It is evident that the business to be reached by the use of the branches, while it may enhance the profit of some individuals, and is largely for the gain of the company, it is equally certain that the use of the road for that purpose is of a public nature, and, like all the other business of the road, it is necessary to be reached in order to enable the company to operate its line of road. Indeed, the record shows that the construction of the branches and spur-tracks laid down upon the map is essential to any successful operation of petitioner's road, and must be held for the public use. This is not the case of a company seeking the condemnation of property to reach some private business, not essential to the successful operation of its road, and for private use, as claimed by counsel for respondents. The public character and use of the branches are as well established as are those of any portion of petitioner's road."

Also, the case of *Chicago, B. & N. Ry. Co.* v. *Porter*, 46 N. W. Rep., 75 (43 Minn., 527). I will read a few lines from the opinion on page 76:

522    CIRCUIT COURT REPORTS—NEW SERIES.

State, ex rel, v. Toledo Ry. & Term. Co.    [Vol. I, N. S.

"The assignment of error that the condemnation is sought for a private, and not for a public use, is based on the fact that the switch track is to terminate at the Laird-Norton manufacturing establishments, and on defendant's claim that it is intended for the sole accommodation of the business of those establishments. Though it seems from the evidence that, at present at least, those establishments may be benefited by the switch-track more than any one else of the public, because they have more freight to ship upon it, the claim that it is intended for their sole accommodation is hardly sustained by the evidence. At any rate, so far as the question of public or private use depends on facts to be found from the evidence, the court below found them against the defendants, and that finding, as also the findings included in the order made, that the public interests require the construction of the switch track, and that the lands proposed to be taken are required and necessary for the purpose, are conclusive, if fairly sustained by the evidence. The switch track, as the evidence shows, is to be part of a system of track, all belonging to the general enterprise of maintaining and operating a railroad for public use. The character of the use, in the case of a railroad or railroad track, does not depend upon the amount of business, or the number of persons who may have occasion to use it, but on the right of the public to the benefit of it. If all the people have a right to the use of it, it is a public use or interest, though the number who require its use may be small."

The case of *South Chicago Ry. Co.* v. *Dix*, 109 Ill., 237, is in point. The court say in the syllabus, fourth paragraph:

"4.    But it is no valid objection to the condemnation of a strip of land for a switch or a side-track of a railway corporation, that the proposed track may serve private use, if in addition to serving such use it is one also necessary for the successful and convenient operation of the main line of the railroad.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"6.    To deny a petition of a railway company for the condemnation of land for a side-track, it should appear that the object thereby sought is clearly an abuse of power, and a taking of private property for an object not required for the convenient operation of the road."

And the question is discussed by Mr. Chief Justice Sheldon in delivering the opinion of the court. He says, on page 244:

"All that appears in the record upon the subject of the character of the track is the petition, plat and affidavits of Kerfoot and

Jeffrey. As between the opposing opinions of the two latter whether the proposed track is a branch road or a side-track, that of the manager of the railroad is, we think, entitled to higher consideration than that of the real estate agent. To deny the petition, it should appear that what is sought is clearly an abuse of power, and a taking of private property for an object not required for the convenient operation of the road." (Citing many cases.)

I cite also 3 Elliott on Railroads, Section 960, and cases cited in the notes. The author says, on page 1354: .

"The question as to what are the legitimate uses which a railroad may make of property in its public character has given rise to much litigation."

In a note the author cites a case, *Getz's Appeal*, 3 Am. & Eng. Ry. Cas., 186, where the court held:

"The right to condemn land for the construction of sidings to private warehouses and manufacturing establishments is clearly within the constitutional power of the Legislature to confer upon railroad companies, because the public interest is thereby subserved by reason of the increased facilities afforded for developing the resources of the state and promoting the general wealth and prosperity of the community."

So it seems that in determining whether the use is a public or a private one, we are to consider the use that the public may make of the track and the use that the track is to the main lines of the railroad itself. As it is said by the Supreme Court of Minnesota in *Chicago, B. & N. Ry. Co.* v. *Porter, supra*, p. 76:

"The switch track, as the evidence shows, is to be a part of a system of track, all belonging to the general enterprise of maintaining and operating a railroad for public use. The character of the use, in the case of a railroad or railroad track, does not depend on the amount of business, or the number of persons who may have occasion to use it, but on the right of the public to the benefit of it. If all the people have a right to the use of it, it is a public use or interest, though the number who require its use may be small."

Now it appears, as has been said, that this railroad is a belt line, encircling the city of Toledo, for the purpose of carrying freight from one railroad to another and from the various establishments of the city to the different railroads, and from them to those

524    CIRCUIT COURT REPORTS—NEW SERIES.

State, ex rel, v. Toledo Ry. & Term. Co.    [Vol. I, N. S.

establishments. The terminal company would be unable to carry on these enterprises or use the main line of the railroad to its fullest advantage, unless they were permitted to build side-tracks from the main line for the purpose of reaching the various industries of the city, to bring them the traffic that might come to the city by the various railroads consigned to them, and take from these various establishments their products to the various railroads that enter the city, for the purpose of shipping it out of the city. These are the chief purposes of this railroad. While the right to condemn and appropriate is to be strictly construed, still the courts ought not to take such a narrow view of the question as to interfere with the fair and just operation of a railroad, or to interfere with the reasonable construction of such tracks adjacent to it, as may be necessary for the carrying on in a proper manner for itself and for the public, the business of the railroad.

The evidence shows that this track, while perhaps it may not be used at first by any one except the Toledo Furnace Company, is open to the public to use and will be open; that no one will be restricted; that it will be open to any manufacturing establishment or industry that may be hereafter located alongside of it; that it is the intention of the company to extend the track by the use of other tracks beyond its present terminus of the Craig shipyard and to the docks and wharves along the river. The evidence shows that the output, or rather the business of the Toledo Furnace Company will probably be some fifty carloads a day in and out, so it is a very extensive establishment, and its business will add much to the business of the railroad.

We are of the opinion that it can not be said that this track, when constructed, will be for a private use; but we think that it may properly be said that it will be for a public use. It is not reasonable to suppose that the company will, and there is no reason shown why they should, exclude any one from the use of this track. The railroad company is building it for the purpose of adding to its business, the more it is used, the more freight is shipped over it to the main road; the more manufacturing industries or individuals use this track, the more the business of the railroad will be increased.

We think, therefore, that the railroad company has the right to condemn and appropriate property for this track; that they have

the right to exercise the power of eminent domain for this purpose; and being of this opinion, the question as to whether the railroad company would have the right to appropriate for a branch road becomes unimportant, as we hold that this is a side-track and not a branch.

We are of the opinion, however, that the defendant had the right to set up this additional defense, which was set up in its supplemental answer, to-wit, that it had taken steps necessary under the statute to construct a branch road, so that if the court should be of the opinion that this was not a side-track, but was a branch, that they would be able to show their authority under the law for constructing a branch road.

We will say, also, that it is our judgment that a railroad company, if the proper steps are taken, as is shown in this case, may condemn and appropriate for a branch road. Section 3280, Revised Statutes, provides that:

"A company may construct branches from the main line to towns or places within the limits of any county through or into which its road passes, or to a connection with any railroad which is or may be built within this state, or to any coal or other mine, stone quarry, plastic clay, pottery clay and fire clay pits or banks, ore or shale banks, if, at a meeting of the stockholders called for that purpose, the holders of a majority of the capital stock of the company, by a vote, in person or by proxy so determine; and upon such determination the president and directors shall make and acknowledge a certificate setting forth the facts and file the same with the secretary of state."

In our judgment, after the steps required by the statute are taken and this power has been conferred upon the board of directors by the stockholders, the company then has the same power to construct a branch road that it had to construct its main line. By these proceedings it is given this additional power, and with it goes the right of eminent domain and the branch then becomes a part of its railroad within the provisions of this section and the following Section 3281, in which last section it is provided that they "may appropriate so much thereof as may be deemed necessary for its railroad, including the necessary side-tracks, etc." And the action of the court in overruling the demurrer to the supplemental answer will be adhered to.

526    CIRCUIT COURT REPORTS—NEW SERIES.

Circleville Light, etc., Co. v. Buckeye Gas Co.  [Vol. I, N. S.

We, however, are of the opinion that this track is not a branch track coming within the provisions of Section 3280, Revised Statutes, but that it is a side-track within Section 3281, Revised Statutes. And being of the opinion that it is for a public purpose and not for a private use, the petition of the relator must be dismissed at his costs.

*B. A. Hayes,* for relator.

*King & Tracy, General Hamilton* and *Clarence Brown,* for defendant.