EDWARD C. LIEDEL v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

May 15, 1903.

Nos. 13,427—(57).

**Right-of-Way Deed.**

Certain property owners executed a deed to a railroad company granting the right of way for a branch road across their property. Contract construed, and *held*:

**Public Road.**

1. The road constructed pursuant to the contract was not a private line for the benefit of the property owners only, but was a public line, a part of the company's railroad system, and subject to the general state laws governing railroads.

**Grade of Road.**

2. The grade at which the road should be built was not fixed by the contract, and it was contemplated by the parties that it should be changed from time to time, as the exigencies of traffic and public necessity might require.

**Change of Grade.**

3. A property owner deriving title from parties to the deed, and who, subsequent to the establishment of the original grade and construction of the road, built warehouses upon his property, contiguous to the track

[1] Reported in 94 N. W. 877.

and right of way, has no claim for damages on account of the expense necessary to raise the warehouses to conform to a new grade established by the railway company subsequent to the construction of the warehouses.

## Same—Evidence.

4. The evidence is conclusive that such new grade was established not arbitrarily, but in response to demands of several of the property owners, as a public necessity to more effectually handle freight and to conform to the grade of the connecting main line of the road.

Action in the district court for St. Louis county, by plaintiff, as administrator of the estate of Edward A. Liedel, deceased, to recover $5,000 for damages to the real estate of decedent caused by defendant's change of the grade of its railroad tracks. The case was tried before Dibell, J., and a jury, which rendered a verdict in favor of plaintiff for $100. From an order granting a motion for a new trial, defendant appealed. Reversed.

*J. L. Washburn* and *W. D. Bailey*, for appellant.

*M. Douglas*, for respondent.

LEWIS, J.

The main track of the St. Paul & Duluth Railroad Company occupied Railroad street, at the foot of Minnesota Point, in the city of Duluth, and certain private owners of property located on the westerly side of Lake avenue between Railroad street and the Government Canal entered into an agreement with the company for the purpose of granting the right of way and securing the establishment of a railroad track running across their property to the canal, connecting with the main line at Railroad street. The agreement is set forth in the deed, the material part of which is as follows:

"This agreement, made and entered into this 30th day of May, A. D. 1881, by and between [the several owners of the property], parties of the first part, and the St. Paul & Duluth Railroad Company, a corporation, * * * party of the second part, witnesseth: That for and in consideration of the sum of one dollar ($1) paid to each of said parties of the first part, the receipt of which is hereby acknowledged, and the covenants and agreements herein contained, said parties of the first part do hereby grant and release unto said party of the second part the use of a strip of land

through the property hereinafter described as the same is respectively owned by them, said strip commencing at a point on the south side of Railroad street in Transfer Division of the city of Duluth, county of St. Louis and state of Minnesota, 100 feet, more or less, west from the intersection of the south line of said Railroad street with the west line of Lake avenue, and commencing also at a point 12 feet westerly on the south line of Railroad street from the point before mentioned, thence in the southerly direction 12 feet wide through [various lots owned by the parties of the first part] on Minnesota avenue in Upper Duluth, as designated and mapped upon a map filed for record in the office of the register of deeds for the county of St. Louis and state of Minnesota, and designated 'Map of Right of Way of Railway Track from Railroad Street to Canal,' to which reference is hereby made for greater certainty,   *   *   *   to be used for a right of way for a railroad track through said premises for the accommodation and use of the said party of the second part and the owners of said above-described property; and the said party of the second part does agree to construct a track over the said right of way, and that it will at all times transfer or switch cars of all railroads terminating at Duluth to and from said track and any private side tracks connecting therewith, for a reasonable charge, not greater than the charge usually made by railroad companies for like services; and it is further agreed that the rights hereby granted shall cease and determine at any time when said strip of land shall cease to be occupied by such railroad track, and in such event the rights herein granted shall revert to the owners respectively."

The right of way so granted extended across forty-six lots, and the entire distance from Railroad street to the Government Canal was a little more than half a mile. The road was built almost through the center of the various lots described, leaving one-half of them on the east fronting upon Lake avenue, and the other half upon the west fronting upon the bay. The road was constructed shortly after the execution of the agreement, and, according to the evidence, was laid nearly upon the surface of the ground. There was, however, some grading required in the vicinity of Railroad street, and the elevation above the bay, for nearly the entire distance, was about two feet and four inches.

Respondent's grantors became owners of the property in question in 1885 by deriving title through parties to the deed. This property is located about four hundred twenty-five feet south of appellant's main track and three hundred fifty feet south of the

south line of Railroad street. In 1885 respondent constructed two frame warehouses upon the property, one on the east and the other upon the west side of the track in question. The building on the east side was one hundred twenty feet long, forty feet wide, and two stories high; the one upon the west side was eighty-five feet long, thirty-eight feet wide, and two stories high; and each building rested upon piling. They were substantial warehouses, costing in the neighborhood of $15,000, and the floors were constructed on a level with the floors of ordinary freight cars when standing on the adjoining track. The warehouses on both sides stood back from the right of way a distance of about twelve feet, and the intermediate space between them and the cars was occupied by platforms constructed for the purpose of handling freight. Other warehouses were, from time to time, constructed at various points along the line of this road, and in 1901 the appellant company, having succeeded to the rights of the St. Paul & Duluth Railroad Company, in order to bring the track up to the grade of the main yard tracks, and at the request of several of the occupants along the branch line, raised it about two feet and seven inches for nearly the entire distance, and across respondent's premises. The effect of raising the track was to interfere with a driveway that had been constructed by respondent across the track at the southerly side of the warehouses, and to require the elevation of the platform and warehouses so as to be on a level with freight car floors, and this action was brought to recover the damages caused by such change.

At the trial below the court limited the recovery of damages to the interruption of the roadway across the track, and held that appellant was not liable for the manner in which the change in the elevation of the track affected the convenience of handling freight from the warehouses. Respondent having moved for a new trial upon the ground that the court had been mistaken in its application of the principle of law as to damages, and for errors in receiving and rejecting certain testimony, a new trial was ordered upon the ground that appellant was liable for the results attending the changed conditions respecting the elevation of the track, and from such order appeal is taken to this court by the railway company.

In our opinion, the first impressions of the trial court regarding appellant's liability were correct, and the question must be answered wholly from a consideration of the instrument above referred to. As we understand the position of respondent and of the court below, it is that the deed of the right of way in question was no more than an easement over private property, and the track agreed to be constructed in pursuance of the contract simply a private road for the convenience of the property owners; and therefore that it was contemplated, as expressed by the language used in the deed, that the ultimate and principal thing agreed to by both parties was that the use of the road by the railroad company was no other nor further than might be incidental and necessary to accommodate the grantors as private parties, and that, having established a grade in pursuance of the contract, and permitted respondent to construct his warehouses with reference thereto, he thereby obtained vested rights, which could not be interfered with by changing the grade without being liable to compensate in damages; it being also claimed by respondent that under such condition the constitutional amendment applies which provides that property shall not be taken or injured without due compensation.

Considering the contract in all its bearings, we are satisfied that it is not susceptible of the interpretation put upon it by respondent. The grant is absolute of a strip of land through the property described to be used for the right of way for the railroad track. In consideration of this grant the railroad company agreed to construct a track over the right of way and to transfer or switch cars from it and its main railroad to and from any private tracks connecting therewith at no greater than the usual charges for such services. The effect of these provisions was to make this branch road a part of the main system, and, in connection therewith, to subject it to the regulations of the State Railroad and Warehouse Commission. This branch is in no sense a private track, but is a complete and efficient part of appellant's railway system. It may be used for the benefit of the public as well as the private property referred to, and the company may establish a station or freighthouses and condemn property for its uses in

connection therewith to the same extent that it may for the benefit of any other part of the road. This inference is not modified by the language pointed out by respondent, viz., that the track is for the accommodation and use of the parties to the deed. That clause neither adds to nor takes away from the effect of the contract. If it be stricken out, it would follow that the track became a part of the main system, and for that reason must be operated for the accommodation of the company; but it must be operated for the benefit of the grantors also, without regard to that clause, for the reason that it is required to be connected with their private side tracks, and that cars be delivered at reasonable rates. Neither does the other provision add to or take away anything from the effect of the contract, viz., that the rights of the company shall cease and determine at any time when the strip of land ceases to be occupied for such railroad track. In the absence of such an agreement, it does not follow that the railway company, of its own volition, might arbitrarily abandon the track, and leave the grantors without railroad facilities. In this respect the company is also under the dominion of the laws of the state.

The agreement is silent as to the grade at which the track should be constructed, and, although error was assigned in the court below for refusal to receive evidence to vary the agreement in that respect, the rulings of the court have not been urged by respondent upon this appeal. Nor does the record show that the grade was adopted in accordance with any agreement between the parties subsequent to the execution of the deed. It was established and the road built in 1881, and respondent did not construct his warehouses until 1885, and there is nothing to indicate that they were placed upon the grade in accordance with any special agreement or understanding.

We have, then, upon the one hand, in 1881, a railroad company which desired to build a branch line to the Government Canal, in connection with its main system; and, upon the other hand, certain private property owners, who desired to secure railroad facilities upon their property. They enter into a contract expressing mutual obligations, and the road is constructed accordingly. For

many years the road, as originally built, answered the purposes, but, finally, as new methods of constructing warehouses and heavier traffic ensued, it became desirable that the grade be raised in order more effectually to accommodate the changing conditions. There was no express agreement on the part of the railroad company to fix its grade at the point where it was when respondent built his warehouses, and it cannot be implied from the language used in the contract. The fair inference from the language used implies that, as the exigencies of traffic demanded, the company would change its grade to accommodate the same, and that if in the meantime any one should build structures with reference to the original grade, they would assume the consequences. This view is in harmony with the powers usually possessed by railroad companies in reference to rights of way acquired by condemnation or purchase, and any other view would place such companies at a great disadvantage, as they would be compelled, no matter what the public demand or the requirements of a majority of the property owners, to compensate those who resisted the change.

The constitutional amendment has no application to the facts in this case for the reason, as already stated, that the deed referred to provided that the railroad company should have the right to change its grade whenever public necessity required. It is true that where right of way has been acquired according to a fixed plan or grade, and assessment of damages has been made with reference to that particular condition, then under the amendment such grade cannot be changed without making the party liable for injury to the property. If it appeared in this case that the railway company had actually agreed that it should maintain its road at the grade originally established, then it would not be permitted to change it without responding for the injury.

It does not follow from what has been said that the railway company would not be responsible for arbitrarily changing its grade without due reference to public necessity; but in this case the evidence is conclusive that the change was made not arbitrarily, but for the benefit of the road, and in response to a demand

for better facilities and conditions by the public and the property owners as a whole.

There being no other question before the court upon this appeal, the verdict should be permitted to stand, and the order appealed from is reversed.