Bedford Quarries Co. *v.* Chicago, etc., R. Co.—175 Ind. 303.

(1907), 40 Ind. App. 296, in support of the contentions before enumerated. It is sufficient to say that in that case the specifications provided, among other things, that the successful bidder should pay Warren Brothers Company for the use of the patents and certain unpatented materials the sum of ninety cents a square yard of pavement. The court very properly held that the specification of a particular brand of patented material destroys competition. The ruling in that case is not applicable here.

The lower court did not err in sustaining the demurrer to the complaint. The judgment is affirmed.

---

## BEDFORD QUARRIES COMPANY ET AL. *v.* CHICAGO, INDIANAPOLIS AND LOUISVILLE RAILWAY COMPANY.

[No. 21,605. Filed March 7, 1911.]

1. RAILROADS.—*Side-Tracks.*—*Condemnation of Land for.*—A railroad company, being empowered by law (§§5192, 5195, 5236 Burns 1908, §§3900, 3903, 3907 R. S. 1881, and §§929-940 Burns 1908, Acts 1905 p. 59 and Acts 1907 p. 306) to condemn lands necessary for tracks, side-tracks, switches, "depots, and other accommodations necessary to accomplish the objects for which the corporation is created," may condemn lands for a right of way for a side-track leading to a stone quarry, where such track will be open impartially to the use of all persons desiring to use it, though the owners of such quarry will use the side-track most. p. 304.

2. CONTRACTS.—*Partial Invalidity.*—*Public Policy.*—*Railroads.*— *Use of Side-Tracks.*—A contract by a railroad company to give the exclusive use of a side-track to one company is to that extent contrary to public policy and void. p. 310.

3. RAILROADS.—*Side-Tracks.*—*Extensions of.*—*Instruments of Appropriation.*—A railroad company may condemn lands for an extension of an existing side-track where the instrument of appropriation pledged that the track would be connected with the main line and form a part of the railroad's facilities and be used in the public service though it had not theretofore acquired the property intervening between the lands sought to be condemned and the main line. p. 311.

4. RAILROADS.—*Condemnation.*—*Appointment of Appraisers.*—*Refusal to Instruct.*—The refusal of the trial court, on the appoint-

ment of appraisers in a railroad right of way condemnation proceeding, to give requested instructions to the appraisers appointed, does not constitute reversible error, the filing of exceptions to their report furnishing a remedy for any error in their proceedings. p. 311.

5. APPEAL.—*Briefs.*—*Waiver.*—*Motions.*—The failure of appellants in their brief to set out the motions, the overruling of which is complained of, or the affidavits in support of such motions, or the substance thereof, waives any error therein. p. 312.

From Lawrence Circuit Court; *James B. Wilson,* Judge.

Action by the Chicago, Indianapolis and Louisville Railway Company against the Bedford Quarries Company and another. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*W. T. Abbott* and *Brooks & Brooks,* for appellants.

*E. C. Field* and *H. R. Kurrie,* for appellee.

MONKS, J.—This proceeding was brought by appellee, a railroad company organized under the laws of this State, against the Bedford Quarries Company, the owner of certain real estate, and the Cleveland Trust Company, trustee, as the owner and holder of a mortgage on said real estate, to appropriate a right of way across said real estate, for the construction of a side-track thereon from appellee's main line to lands containing building stone.

The proceeding was brought under an "act concerning proceedings in the exercise of eminent domain," approved February 27, 1905 (Acts 1905 p. 59) and an amendment thereto (Acts 1907 p. 306, §§929-940 Burns 1908).

Appellants each filed sixteen objections to said proceeding. The court heard the evidence, overruled each of said objections, and appointed appraisers under said act of 1905.

1. From said interlocutory order appointing appraisers, appellants appealed to this court under §933, *supra.*

It appears from the record that there is a side-track connecting with appellee's main line extending west for a distance of about a mile into the property of a stone-quarry company. This side-track is being used by appellee in

hauling all kinds of freight to and from the stone-quarry, at which it ends, as well as other freight which is offered to it from time to time. From thirty to forty carloads of stone are handled each day during the quarrying season. It also handles inbound shipments of wood and stone, also coal and machinery, consigned to the Perry, Mathews, Buskirk Stone Company, the Ohio and Western Lime Company and the Furst-Kerber Stone Company. Appellee handles as a common carrier freight offered by any one on said side-track. The proposed side-track is to connect with the one mentioned at a point about thirty-four hundred feet from the main track, and run thence in a northerly direction about six thousand feet over the lands of the Bedford Quarries Company, appellant, and the lands of other persons to the lands owned by the Furst-Kerber Stone Company.

Appellants insist that this proceeding cannot be maintained, because it is an attempt by a railroad company to appropriate lands for a private purpose, and not for a public use.

Railroad companies organized under the laws of this State are authorized to take, by condemnation proceedings, lands necessary for their tracks, side-tracks, switches, " depots, and other accomodations necessary to accomplish the objects for which the corporation is created." §§5192, 5195, 5236 Burns 1908, §§3900, 3903, 3907 R. S. 1881; §§929–940, *supra.*

It was said by the court in *Southern Pine Fibre Co.* v. *North Augusta Land Co.* (1892), 50 Fed. 26, 27: " The term ' side-track ' has a well-known signification. It means connection with some railroad affording communication with market."

There is a sharp conflict of authority as to whether the use of land for switches, spurs and side-tracks to private property constitutes a public use for which rights of way may be condemned. There are numerous cases, however, that hold that such tracks may be built for the purpose of reaching a coal mine or a manufacturing establishment, as it is a public enterprise for which the power of eminent domain may be

used, provided the public has the right to use such tracks. "The right of the public to use such tracks makes the use thereof public. Such tracks seem a proper mode of making the facilities of the railroad available and open to all who are so situated as to be able to use them upon equal terms, and there is no sound reason why they should not be regarded as a public use." *Wolfard* v. *Fisher* (1906), 48 Ore. 479, 84 Pac. 850, 87 Pac. 530, 7 L. R. A. (N. S.) 991, 997, and cases cited; *Kettle River R. Co.* v. *Eastern R. Co.* (1889), 41 Minn. 461, 43 N. W. 469, 6 L. R. A. 111; *Phillips* v. *Watson* (1884), 63 Iowa 28, 18 N. W. 659; *Morrison* v. *Thistle Coal Co.* (1903), 119 Iowa 705, 94 N. W. 507; *DeCamp* v. *Hibernia, etc., R. Co.* (1885), 47 N. J. L. 43; *Hibernia, etc., R. Co.* v. *DeCamp* (1885), 47 N. J. L. 518, 4 Atl. 318, 54 Am. Rep. 197; *Hays* v. *Risher* (1858), 32 Pa. St. 169; *Hairston* v. *Danville, etc., R. Co.* (1908), 208 U. S. 598, 28 Sup. Ct. 331, 52 L. Ed. 637; *St. Louis, etc., R. Co.* v. *Petty* (1893), 57 Ark. 359, 21 S. W. 884, 20 L. R. A. 440, and note; *Roberts* v. *Williams* (1854), 15 Ark. 43, 49; *Truesdale* v. *Peoria Grape Sugar Co.* (1882), 101 Ill. 561; *Mills* v. *Parlin* (1883), 106 Ill. 60; *South Chicago R. Co.* v. *Dix* (1883), 109 Ill. 237, 17 Am. and Eng. R. Cas. 157; *Chicago, etc., Canal Co.* v. *Garrity* (1885), 115 Ill. 155, 3 N. E. 448; *McGann* v. *People, ex rel.* (1902), 194 Ill. 526, 62 N. E. 941; *People, ex rel.,* v. *Blocki* (1903), 203 Ill. 363, 67 N. E. 809; *Madera R. Co.* v. *Raymond Granite Co.* (1906), 3 Cal. App. 668, 87 Pac. 27; *Hurd* v. *Atchison, etc., R. Co.* (1906), 73 Kan. 83, 84 Pac. 553; *Kansas City, etc., R. Co.* v. *Louisiana, etc., R. Co.* (1905), 116 La. 178, 40 South. 627, 5 L. R. A. (N. S.) 512, 7 Am and Eng. Ann. Cas. 831; *Farnsworth* v. *Lime Rock R. Co.* (1891), 83 Me. 440, 22 Atl. 373; *Ulmer* v. *Lime Rock R. Co.* (1904), 98 Me. 579, 57 Atl. 1001, 66 L. R. A. 387; *Toledo, etc., R. Co.* v. *East Saginaw, etc., R. Co.* (1888), 72 Mich. 206, 40 N. W. 436; *Minneapolis, etc., R. Co.* v. *Nicolin* (1899), 76 Minn. 302, 79 N. W. 304; *Liedel* v. *Northern Pac. R. Co.* (1903), 89 Minn. 284, 94 N. W. 877; *Roby* v. *State, ex rel.* (1906),

76 Neb. 450, 107 N. W. 766; *Clarke* v. *Blackmar* (1871), 47 N. Y. 150; *Corporation Commission* v. *Seaboard, etc., Railway* (1905), 140 N. C. 239, 52 S. E. 941; *State, ex rel.,* v. *Toledo R., etc., Co.* (1903), 1 Ohio C. C. (N. S.) 513; *Stockdale* v. *Rio Grande, etc., R. Co.* (1904), 28 Utah 201, 77 Pac. 849; *Zircle* v. *Southern R. Co.* (1903), 102 Va. 17, 45 S. E. 802, 102 Am. St. 805, and note; *State, ex rel.,* v. *Superior Court* (1906), 42 Wash. 675, 85 Pac. 669; *Chicago, etc., R. Co.* v. *Morehouse* (1901), 112 Wis. 1, 87 N. W. 849, 56 L. R. A. 240, 88 Am. St. 918, and note; *Caretta R. Co.* v. *Virginia-Pocahontas Coal Co.* (1907), 62 W. Va. 185, 57 S. E. 401; *Butte, etc., R. Co.* v. *Montana, etc., R. Co.* (1895), 16 Mont. 504, 41 Pac. 232, 31 L. R. A. 298, 50 Am. St. 508; *Rochester, etc., Iron Co.* v. *Berwind-White Coal, etc., Co.* (1871), 24 Pa. Co. Ct. 104; *Robbins* v. *Western, etc., R. Co.* (1900), 31 Pitts. L. J. (O. S.) 181; *State, ex rel.,* v. *Toledo R., etc., Co.* (1903), 24 Ohio C. C. 321, and cases cited; *Mull* v. *Indianapolis, etc., Traction Co.* (1907), 169 Ind. 214, 220; *Sexauer* v. *Star Milling Co.* (1910), 173 Ind. 342, 26 L. R. A. (N. S.) 609; *Chicago, etc., R. Co.* v. *Southern Ind. R. Co.* (1906), 38 Ind. App. 234; 1 Lewis, Eminent Domain (3d ed.) pp. 532, 534, and notes; Nichols, Eminent Domain §221; 10 Am. and Eng. Ency. Law (2d ed.) 1078, 1079; 15 Cyc. 590, 591; 2 Elliott, Railroads (2d ed.) p. 515.

The character of the use of a railroad or railroad track does not depend on the amount of business done or the number of persons who may have occasion to use it, but on the right of the public to the benefit of it. If all the people have the right to use it, it is a public interest, although the number who require its use may be small. *Chicago, etc., R. Co.* v. *Porter* (1890), 43 Minn. 527; *Decamp* v. *Hibernia, etc., R. Co., supra.*

It has been held that there may be a grant to private individuals of the right to lay tracks in the streets connecting with the public railroad tracks previously laid and extended to the manufacturing establishments of those laying the

tracks, but in such cases the tracks so laid become in legal contemplation, to all intents and effects, tracks of the railroad with which they are connected, open to the public use and subject to the public control, in all respects as other railway tracks are open to public use. *South Chicago R. Co.* v. *Dix, supra.*

It is said in 2 Wood, Railroads (2d ed.) p. 828: "To deny a petition of a railway company for the condemnation of land for a side-track, it should appear that the object thereby sought is clearly an abuse of power, and a taking of private property for an object not required for the convenient operation of the road." *In re Boston, etc., R. Co.* (1873), 53 N. Y. 574; *New York, etc., R. Co.* v. *Metropolitan, etc., Co.* (1875), 63 N. Y. 326; *Chicago, etc., R. Co.* v. *Town of Lake* (1874), 71 Ill. 333; *Smith* v. *Chicago, etc., R. Co.* (1883), 105 Ill. 511; *Cleveland, etc., R. Co.* v. *Speer* (1867), 56 Pa. St. 325, 94 Am. Dec. 84; *In re New York Cent. R. Co.* (1879), 77 N. Y. 248; *South Chicago R. Co.* v. *Dix* (1883), 109 Ill. 237.

The running of a side-track by a railroad company to a private manufacturing establishment to connect the business of such establishment with the main line of the railroad is a public use for which land may be appropriated. "These establishments [manufacturing and mining] are very numerous, especially in Pennsylvania, along and near lines of railroad. They serve to develop the resources of the state, they give employment to vast numbers of citizens and constitute a most important element in the general wealth and prosperity of the community. Convenience and consequent cheapness of transportation are in most cases essential, and in many vital to their maintenance. Moreover, considerable portions of the general public are directly interested in the traffic which goes to them, and in that which comes from them. Hence in the connection in which we are now considering them, we cannot regard them as merely private interests and therefore without the pale of that public use for which private

property may be taken in the construction of railroads lawfully established and actually used for public purposes." *Getz's Appeal* (1881), 3 Am. and Eng. R. Cas. 186.

It is said in 15 Cyc. 590, 591: "A * * * spur, or switch track necessary to the proper operation of the main line of a railroad, or which may be necessary to connect important industries, or even a single industry, with the main line or other public highways, provided, however, that the general public has the right to use it, although it may also subserve a private interest, is a public use for which private property may be taken under the power of eminent domain." *South Chicago R. Co.* v. *Dix, supra; Lower* v. *Chicago, etc., R. Co.* (1882), 59 Iowa 563, 13 N. W. 718; *Toledo, etc., R. Co.* v. *Daniels* (1865), 16 Ohio St. 390; *St. Louis, etc., R. Co.* v. *Petty, supra; Morrison* v. *Thistle Coal Co.* (1903), 119 Iowa 705, 94 N. W. 507; *Phillips* v. *Watson, supra; Farnsworth* v. *Lime Rock R. Co., supra; New Central Coal Co.* v. *George's Creek Coal, etc., Co.* (1873), 37 Md. 537; *Toledo, etc., R. Co.* v. *East Saginaw, etc., R. Co., supra; Chicago, etc., R. Co.* v. *Porter, supra; Kettle River R. Co.* v. *Eastern R. Co., supra.*

In 2 Elliott, Railroads (2d ed.) p. 515, it is said: "And the weight of authority, as well as the better reason, seems to be to the effect that lines of railroad, branches or spurs to mines, manufacturing establishments, and the like, are a public use for which land may be condemned where the general public have the right to use them or to be served without discrimination."

"The very fact that condemnation is necessary in order to establish them, shows that they are capable of being used by more than one." 1 Lewis, Eminent Domain (3d ed.) p. 533.

It is evident from what we have said, and from the authorities cited, that the proposed side-track when constructed will be open to public use, and subject to public control in all respects as its other tracks are open to public use. Said side-track will be open to all who are so situated as to be able to use it, upon equal terms, and must therefore be

regarded as a public and not a private use. The proposed side-track is not to be constructed for the sole purpose of furnishing an outlet for the business of one quarry. It is the extension of a track now reaching a quarry, which is putting out forty or fifty carloads of stone each day. It is to be constructed over land which is underlaid with a good quality of building stone, which can only be marketed by having a railroad track built upon and across said land. It comes up very near to a village of three or four hundred people, and reaches a locality where there is a great quantity of timber and other freight to be moved.

According to the estimate of one witness, there are three or four carloads a day to be handled from the three quarries now existing along the old side-track and the one proposed. Appellant quarries company seems to be a rival quarrying company with the Furst-Kerber Company. The Furst-Kerber Company has developed the land to the north of the land of said appellant. It now has seventy-five or one hundred carloads of stone piled up which must remain there until side-track facilities can be had. The public generally is interested in the opening of these quarries, and the development of this stone land; the country at large, in the price of stone; and the particular locality, in the development of the resources of the county. Appellee has a main line of railroad built through that territory, which is naturally expected to serve that locality, and it is a part of its business to provide such facilities as must be had in order for this business to be accommodated.

It is insisted, however, by appellant quarries company, that the side-track with which the proposed side-track is to be connected " is a private railroad built for the exclusive 2. use of said appellant's predecessor, and cannot be used by appellee for public business as a common carrier, or for the use of another shipper, without the consent of said appellant, or unless the right is appropriated by law."

The evidence shows that a contract was entered into in 1884, which provided that said track should not be used by other persons " to transport stone or materials, used in the construction or operation of stone quarries, without the consent of the Bedford Quarries Company's predecessor. It would seem that the public duty of appellee to use its facilities for the benefit of all would make such provision in the contract void. *Chicago, etc., R. Co.* v. *Southern Ind. R. Co.* (1906), 38 Ind. App. 234. There is nothing, however, to show that the contract is in effect, and the evidence shows that said side-track is being used by appellee in handling any and all business that can be carried thereon. Appellants, however, cannot in this case object to the condemnation of their property, on the ground that appellee had not yet acquired the intervening property needed to complete the track and connect it with the main line. It is sufficient in this case that appellee has by its instrument of appropriation pledged that its track would be connected with the main line and form a part of its railroad facilities, and be used in its public service.

It is next insisted that the court below erred in refusing to instruct the appraisers as to their duty, and in refusing to give them the written instructions requested by appellants. There is nothing in the statute requiring the court to instruct the appraisers appointed, in proceedings like this, or to give any instructions requested by either of the parties. While it may not be error to instruct the appraisers as to their duties, it is not reversible error to refuse to do so. Either party, if not satisfied with the award, may, under §936, *supra*, file exceptions to the report of the appraisers, and have a trial thereof, as in other civil actions in which the giving and refusing to give instructions may be questioned by a motion for a new trial and on appeal by errors properly assigned.

The Cleveland Trust Company contends that the court

erred in overruling its motion to set aside the service of process upon it, and in overruling its motion for a 5. continuance, which motions were founded upon affidavits.

Appellants, in their brief, have failed to set out either said motions, the affidavits in support thereof, or the substance thereof, as required by rule twenty-two of this court. Said questions are therefore waived and cannot be considered. *Town of Jasonville* v. *Humphreys* (1908), 170 Ind. 583, and cases cited; *Chicago, etc., R. Co.* v. *Walton* (1905), 165 Ind. 253, and cases cited.

The interlocutory order appointing appraisers is affirmed.